**UNITED STATES of America**

v.

**Merle V. WATSON, Appellant.**

**No. 75–2099.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1976.

Decided Jan. 5, 1977.

Rehearing denied Feb. 18, 1977.

Karen Zokoff, student counsel, with whom Michael Geltner and Geoffrey McC. Johnson, student counsel, were on the brief, for appellant.

Sallie H. Helm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge.

This is an appeal from a denial by the District Court, without hearing, of appellant's application under 28 U.S.C. § 2255 for vacation of his criminal sentence, entered upon a guilty plea. Appellant's claim for collateral relief is founded upon his assertion that his guilty plea was vitiated by his failure to be informed that his sentence was required by statute to include a special parole term, and that this failure constituted a violation of Rule 11 of the Federal Rules of Criminal Procedure. For the reasons hereinafter appearing, we hold that those Rules themselves make provision for collateral challenge of a sentence based upon an allegedly defective guilty plea; and, accordingly, we remand with directions that appellant's application for relief be considered and disposed of as a motion to withdraw his guilty plea under Rule 32(d), Fed.R.Crim.P.

I

An indictment was returned on November 1, 1973, charging appellant with six counts of narcotics violations. When the case was called for trial on March 5, 1974, appellant signified to the court his purpose to plead guilty to one count of possessing heroin with intent to distribute, 21 U.S.C. § 841(a), and the prosecution stated its agreement to dismiss the remaining counts and not to allocute at sentencing. Appellant's counsel described to the court several

conversations he had had with appellant about a number of circumstances relevant to the decision to plead. The court explained to appellant in detail his right to proceed to a jury determination of his guilt or innocence, and his constitutional rights in that proceeding. The elements of the offense to which appellant proposed to plead were explained, and he was informed by the court that sentence thereon might (1) be comprised of as many as 15 years in prison, or a fine of $25,000, or both, (2) be consecutive to his Virginia probationary sentence,[1] and (3) entail possible revocation of his Virginia probation. Appellant professed his understanding of these contingencies, and, in response to a question from the court, stated his satisfaction with the assistance given him by his counsel.

The court then inquired into the factual basis for the guilty plea, and was told by both the prosecutor and a Government witness that the evidence would show that on two occasions appellant had sold heroin to an undercover police officer, and that, when eventually arrested, had been found in possession of illegal narcotics. Appellant agreed that the facts as stated were correct, but asked for an *Alford* plea (*North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)), asserting that his defense was "entrapment," which his counsel interpreted to mean that appellant

"thought he was doing a favor for another narcotics user . . . ." Although the court ruled that an *Alford* plea was not justified, appellant reaffirmed his purpose to plead guilty to the one count; and the plea was taken.[2]

At the subsequent sentencing proceeding on April 11, 1975, the court, with no objection made, imposed a prison term of two to six years, to be followed by a special parole term of four years.[3] On September 9, 1975, appellant wrote a letter to the court requesting vacation of his sentence "pursuant to 2255." Two weeks later the court marked the request as denied.

## II

Rule 11, Fed.R.Crim.P., as it existed at the time of appellant's plea,[4] provided in pertinent part as follows:

> The court may refuse to accept a plea of guilty, and shall not accept such a plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge *and the consequences of the plea.* (Emphasis supplied).

Appellant's contention is that, in accepting his plea without having determined that appellant was aware of the statutorily mandated special parole term, the court violated

---

**1.** It appears from the record that the offense to which appellant pleaded guilty in the District Court was committed while appellant was serving the probationary part of a split sentence imposed pursuant to a plea of guilty to a larceny charge in the United States District Court for the Eastern District of Virginia.

**2.** Before taking the plea the court was also at pains to warn appellant that, since the prosecution was prepared to go forward with the trial, with all its witnesses present, when appellant first gave notice of his purpose to plead, the court would not be disposed to allow the plea to be withdrawn at or before sentencing.

**3.** A special parole term of "at least 3 years in addition to" the prison term imposed upon appellant was made mandatory by 21 U.S.C. § 841(b)(1)(A). This special parole term is a new departure in sentencing effected by the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* It

has been authoritatively characterized as "a new concept" independent of any other parole provided by law, and as "designed to take effect upon the expiration of the period of parole supervision following mandatory release, or at the full term date following parole, or upon release from confinement following sentence expiration." *Roberts v. United States*, 491 F.2d 1236, 1238 (3d Cir. 1974).

**4.** Rule 11 was amended effective December 1, 1975. The comparable provision now is:

> Before accepting a plea of guilty . . . the court must address the defendant personally in open court and inform him of, and determine that he understands, the following: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, *and the maximum possible penalty provided by law.* . . . (Emphasis supplied).

the Rule. This claim rests, of course, upon an interpretation of "the consequences of the plea" as comprehending the special parole term. As a last, and alternative, argument in its brief the Government asserts that we have not as yet, and need not now, embrace that interpretation. Its rationale essentially is that any adverse effect of the special parole term can come about only by reason of the defendant's conduct after that term attaches. Further, it insists that the restraint deriving from the supervision given during good behavior is minimal, and should not be taken to constitute a substantial aspect of the total sentence.

▉ It is obvious that this approach has a highly subjective element in it, and that its force may vary depending upon whether one is sitting on the bench or standing in front of it. In any event, it is, as the Government volunteers, an argument that has failed of acceptance in six circuits; and it fares no better in this one.[5] We have no doubt that the authors of Rule 11 in its original form would have considered a mandatory special parole term of three years or more following upon a prison sentence to be a matter of consequence to a defendant proposing to plead guilty. Although the 1975 amendment of Rule 11 dropped the reference to the "consequences" of the plea, we regard its mandate that a defendant be informed of the "maximum possible sentence" as continuing to require that he be informed of the mandatory special parole term.

### III

The Government's principal argument for affirmance derives, however, from the fact that appellant has sought relief under § 2255. It insists that there are recognized distinctions between the scope of relief available on direct appeal, on the one hand, and the collateral challenge afforded by that statute, on the other. Since the District Court here, in taking the plea, at most committed a violation of Rule 11, that error is not, so it is said, of such dimension as to warrant collateral disturbance of the conviction. The Government points in this regard to *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1975), where the Supreme Court, in holding 2255 relief available to repair an injustice flowing from an intervening change in the circuit's interpretation of the draft laws, felt it necessary to add:

This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. In *Hill v. United States*, 368 U.S. 424, 429, [82 S.Ct. 468, 7 L.Ed.2d 417] (1962), for example, we held that "collateral relief is not available when all that is shown is a failure to comply with the formal requirements" of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested that the appropriate inquiry was whether the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Id.*, at 428 [82 S.Ct. 468] (internal quotation marks omitted). The Court did not suggest that any line could be drawn on the basis of whether the claim had its

---

5. *Smith v. United States*, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963), *cert. denied*, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964), is not to the contrary. This court there held that, on the particular facts there involved, the showing of manifest injustice, required to support a successful motion to withdraw a guilty plea after sentencing under Rule 32(d), Fed.R.Crim.P., had not been made out by a defendant who alleged that he had not been told of his statutory ineligibility for parole. Had the court really believed that there was no violation of Rule 11, it could have stopped there, as the concurring judge implies. *United States v. Brock*, 165 U.S.App.D.C. 291, 507 F.2d 1114 (1974), did not involve any attempt to withdraw a guilty plea; defendant there moved rather to vacate and correct a sentence from which the mandatory special parole term had been omitted, and this

source in the Constitution or in the "laws of the United States." [6]

It is the Government's submission that it is wholly reasonable that a greater showing of injustice is necessary to obtain § 2255 relief than is requisite on direct appeal; and it stresses that appellant has asserted neither prejudice to himself nor involuntariness in the making of his plea, only the violation of the Rule. It stresses the unfairness of requiring the prosecution, which was ready, willing and able to proceed with the trial on March 5, 1974, to face the problems inherent in placing itself in that position again more than two years later. In any event, says the Government, these are the kinds of considerations which underlie the Supreme Court's more stringent test for the invocation of § 2255; and it is a test which appellant has fallen far short of meeting.

Appellant, contrarily, argues that *McCarthy v. United States*, 394 U.S. 459, 470, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418 (1969), announced a *per se* rule that "a defendant whose plea has been accepted in violation of

Rule 11 should be afforded the opportunity to plead anew . . . " [7] Appellant further relies heavily on the fact that in five cases involving the same violation of Rule 11 as that presented in this case, namely, failure to mention the special parole term, five circuit courts of appeals have taken the *per se* approach and vacated the sentences in § 2255 proceedings.[8]

However, one of those circuits—the Eighth—appears recently to have abandoned that approach. *McRae v. United States*, 540 F.2d 943, decided August 26, 1976. In *McRae* the court reexamined its *Richardson* position by reference to the intervening discussion by the Supreme Court in *Davis* of the scope of 2255 review. It concluded from that discussion that "[N]oncompliance with the formal requirements of a rule of criminal procedure would not permit collateral review in the absence of indicated prejudice to the defendant . . ." Accepting the fact that a Rule 11 error had been made by the trial court in failing to inform the defendant of the special parole term, the court ruled that "the evaluation of that error in post-*Davis* § 2255 proceed-

court directed the District Court to make the correction.

**6.** Hill was one of three cases involving the defendant's right to allocute at sentencing provided in Rule 32(a), Fed.R.Crim.P. *See also Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), and *Van Hook v. United States*, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961). The violations of the Rule in *Green* and *Hill* were raised in 2255 motions, but denials of relief were affirmed by the Supreme Court. In *Van Hook* the Court, shortly after *Green*, reversed a denial below and remanded for resentencing in compliance with Rule 32. In *Hill* a year later the Court explained the differing results by noting (368 U.S. at 429 n.6, 82 S.Ct. 468) that *Van Hook* was a direct appeal, saying (at 428, 82 S.Ct. at 471):

The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. . . .

**7.** *McCarthy* was a *direct appeal* in which the Supreme Court, relying on its supervisory power, reversed a conviction based on a guilty plea for a violation of Rule 11 (failure to address the defendant personally to determine voluntariness and understanding, and failure to determine *factual basis for the plea*). Appellant seeks to weaken the force of the fact that *McCarthy* was a direct appeal, as distinct from a collateral attack, by noting that (1) the Court preferred the reasoning in *Heiden v. United States*, 353 F.2d 53 (9th Cir. 1965), to that of other circuits and (2) *Heiden* itself was a 2255 proceeding. But the Court's utilization, in deciding a direct appeal, of the *Heiden* analysis of the problem carries no certain implications for the differing context of collateral attack, where other considerations are operative. Even the Ninth Circuit quickly decided *en banc* not to apply *Heiden* retroactively to pleas taken before it was decided. *Castro v. United States*, 396 F.2d 345 (9th Cir. 1968).

**8.** *United States v. Yazbeck*, 524 F.2d 641 (1st Cir. 1975); *Ferguson v. United States*, 513 F.2d 1011 (2d Cir. 1975); *United States v. Wolak*, 510 F.2d 164 (6th Cir. 1975); *Roberts v. United States*, 491 F.2d 1236 (3d Cir. 1974); *United States v. Richardson*, 483 F.2d 516 (8th Cir. 1973).

ings will now require that the error be placed in the context of all surrounding legal events and indicated prejudices . . . ."[9]

In taking this altered approach in *McRae*, the Eighth Circuit in terms aligned itself with the Seventh Circuit's decision in *Bachner v. United States*, 517 F.2d 589 (7th Cir. 1975). There the Seventh Circuit noted that it had already, in response to the advent of *Davis*, drawn back from the *per se* approach in a 2255 case involving a violation of Rule 11 by reason of a failure to inform the pleading defendant of ineligibility for parole, *Gates v. United States*, 515 F.2d 73 (7th Cir. 1975), and it saw no reason to proceed differently when the violation consisted of a failure to advise the defendant of the special parole term. Applying the *Davis* standard, it concluded from the particular circumstances before it that 2255 relief should not be available. *See also Bell v. United States*, 521 F.2d 713 (4th Cir. 1975), where, in a case involving a Rule 11 violation for failure to inform the defendant of the special parole term, the court explicitly rejected "the *per se* rule of *Roberts* and *Richardson*" in deciding an appeal from a denial of a motion to vacate sentence based on a guilty plea.

## IV

Appellant argues, alternatively, that, if the court were to treat his letter invoking 2255 as a motion to withdraw guilty plea

under Rule 32(d), Fed.R.Crim.P., the conviction should be set aside and leave given appellant to withdraw his plea—the same relief as that sought under 2255. Rule 32(d) provides as follows:

> A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

 It will be noted from the foregoing language of the Rule that there is no limitation upon the time within which relief thereunder may, after sentencing, be sought. In this respect it embodies the central feature of collateral attack under 2255.[10] Indeed, it would appear to us that Rule 32(d) can in substance be regarded as a special, and perhaps exclusive, avenue of collateral challenge to an allegedly improper taking of a guilty plea. It contains its own explicit formulation of the standard to be applied, namely, "to correct manifest injustice." And, although it remains for the court to determine the reach of that standard in relation to the facts of a particular case, the express terms of the standard itself have the force of a statute,[11] and were presumably intended to govern in the case of any person seeking belatedly to withdraw his guilty plea. They have at any rate the virtue of being immune from the shifting and still somewhat opaque judicial

9. Following this approach, the court concluded from its examination of the record that there was no fundamental defect resulting in a complete miscarriage of justice within the standard enunciated in *Davis*. Central to its conclusion in this regard were the circumstances that (1) the sentence actually imposed, including the special parole term, did not exceed the maximum possible term of imprisonment to which the defendant was exposed and of which he was informed, and (2) the record showed that the defendant had disclaimed to his counsel any interest in parole consequences since he said he did not intend to violate parole.

10. In his argument against limiting the scope of 2255 in relation to direct appeal, appellant stresses the harshness that would ensue because of the short period of time provided for

taking a direct appeal in Rule 4, F.R.App.P. This is undoubtedly a serious problem incident to any such differentiation. But it is not a problem to the extent that Rule 32(d), and not 2255, is regarded as the vehicle for collateral attack in the case of guilty pleas.

11. The rules enabling act under which Rule 32(d) came into being, 18 U.S.C. § 3771, provides that rules of criminal procedure prescribed by the Supreme Court do not become effective until 90 days after they have been reported to Congress. The statute goes on to provide, however, that once effective "[A]ll laws in conflict with such rules shall be of no further force or effect . . . .."

formulations differentiating between direct appeals and 2255 motions.

██ There is much truth in Justice Rehnquist's observation, dissenting in *Davis* (at p. 363 of 417 U.S., at p. 2313, of 94 S.Ct.), that "the scope of relief in a habeas corpus proceeding remains largely undefined . . . " *And see* Judge (now Justice) Stevens's concurring opinion in *Bachner*, 517 F.2d at 597–99, for a close analysis of some of the uncertainties that accompany the resolution of the scope of 2255 in relation to a Rule 11 violation. Under these circumstances it would seem but the part of common sense to consider and dispose of under Rule 32(d) all requests for collateral relief in the form of withdrawal of a guilty plea.

██ In any event, confronted by a *pro se* litigant who wrote a letter referring to 2255, and a denial by fiat of his request without hearing or any identification by the court of the standards applied by it, we think it both in the interest of justice here—and appropriate in terms of the division of functions between trial and appellate courts—to vacate the District Court's judgment and to remand the case with directions to treat the letter as a motion under Rule 32(d) and to dispose of it by reference to the specific standard contained in that Rule.

*It is so ordered.*